DAVID E. DE LORENZI
ANDREW M. GRODIN
**GIBBONS, P.C.**
One Gateway Center
Newark, NJ  07102-5310
(973) 596-4743

*Of Counsel*

JEFFREY G. KNOWLES* (State Bar No. 129754)
JULIA D. GREER* (State Bar No. 200479)
JONATHAN M. ELDAN* (State Bar No. 222178)
BRIAN J. SCHMIDT* (State Bar No. 265937)
COBLENTZ, PATCH, DUFFY & BASS LLP
One Ferry Building, Suite 200
San Francisco, California  94111-4213
Telephone:  415.391.4800
Facsimile:   415.989.1663

*   Admitted *Pro Hac Vice*

Attorneys for Plaintiffs
SPD SWISS PRECISION DIAGNOSTICS GmbH

RECEIVED
NOV - 8 2010
AT 8:30
WILLIAM T. WALSH
CLERK                  M

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SPD SWISS PRECISION DIAGNOSTICS GmbH, a Swiss Corporation,<br><br>Plaintiff,<br>v.<br><br>CHURCH & DWIGHT CO., INC., a Delaware corporation, and DOES 1 through 10, inclusive,<br><br>Defendant. | Case Nos.: 3:09-CV-01802 (FLW)(TJB)<br>3:10-CV-00276 (FLW)(TJB)<br>3:10-CV-00453 (FLW)(TJB)<br><br>**STIPULATION RE: PRODUCTION OF ELECTRONICALLY STORED INFORMATION (ESI)** |
| AND CONSOLIDATED ACTIONS. | |

13277.001 1588511v1

## STIPULATION FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION (ESI)

I. **PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI").**

A. **Production of ESI as TIFF Images with Metadata and Extracted Text.**

All electronic mail (including, but not limited to, documents with the following file extensions: (.PST, .OST, .NSF, .MSG, .EML, .OFT, .DXL, .HTML, .HTM, .MHT, .MBX), word processing documents (including, but not limited to, Word and WordPerfect documents, and documents with the following file extensions: .DOC, .DOCX, .DOT, .DOTX .WPD, .RTF, .WPS, .TXT, .ODT, .SDW, .SXW), and static image documents (including, but not limited to, documents with the following file extensions: .PDF, .JPG, .GIF, .BMP, .TIF, .PNG, .EPS, .ODG, .PSD, .QXD, .INDD, .AI, .DRW). ESI that is produced will be produced in static single-page (1-bit, black-and-white) Group IV Tagged Image File Format (TIFF) format, 300 DPI; in instances where color is reasonably necessary to comprehend a document, images will be produced in JPEG (.JPG) format. All other ESI will be produced in native format.

1. **Bates Numbering.**

The producing party will brand all produced TIFF images in the lower right-hand corner with a unique sequential zero-filled (e.g. 00000001) Bates number containing an alphabetic prefix, using a consistent font type and size. The Bates number must not obscure any part of the underlying image.

2. **File Names.**

Image file names will be identical to the corresponding Bates numbered images, with a ".tif" file extension.

3. **Confidentiality Endorsements.**

The producing party will brand any confidentiality or similar endorsements in a corner of the TIFF image. Those endorsements must be in a consistent font type, size, location on the TIFF

image, and must not obscure any part of the underlying image or bates number.

4. **Production of Extracted Full Text.**

For all material originating as ESI, which contains extractable text, the producing party will also produce extracted full text (i.e., text extracted from ESI), in a single text file corresponding to each document produced. For documents without extractable text, the producing party must perform an Optical Character Recognition ("OCR") process on the document, and the resulting text must be produced as if it were extracted from within the ESI. The full text file name will be composed of the Bates number of the associated document's first page, with a ".txt" file extension. All extracted text files must be stored in a separate directory on the production media from the directory in which the primary documents are stored.

5. **Production of Metadata Load File.**

The producing party will provide the following metadata, to the extent available, for all ESI produced: Document ID number (should correspond with beginning bates number), beginning Bates number, ending Bates number, start attachment, end attachment, custodian or source, author, creation date of document, last modification date of document, last saved date of document, last printed date of document, original file path, original file name, file type/file extension, MD-5 hash value, title, and page count. The producing party shall provide this information as a standard delimited ASCII text file using the standard Concordance delimiters (ASCII value (020) or ¶ for the field separator, ASCII value (254) or þ for the text qualifier, and ASCII value (174) or ® for a line break).

6. **Metadata for E-Mail.**

In addition the metadata called for in section A.1. e. above, to the extent available, for all e-mail produced, the producing party will also include the following as fielded metadata in the metadata load file: subject, from, to, carbon copies, blind carbon copies, date sent, time sent, date

received, time received, attachment file name, begin attachment, and end attachment. Family relationships among email and attachments will be maintained by ensuring that attachments immediately follow their parent email, and setting the "begin attachment" and "end attachment" metadata fields appropriately.

### 7.     Processing Time Stamps.

All metadata produced which references a time, such as the time an email message was sent or received, shall be normalized to the General Meridian Time (GMT) time zone.

### 8.     Image Load File.

The producing party will also provide an Image Load File which facilitates the linking of all produced static image files with the related metadata being produced, in the litigation database. This image load file will contain at least the unique document beginning Bates number, and the file path of the corresponding image or native file as found on the delivering media. The producing party may provide this information either in an agreed upon common litigation database format or as a standard comma delimited ASCII text file.

### 9.     Redaction.

If the TIFF image rendering of any ESI being produced needs to be redacted or altered before production, the OCR process on that ESI will be done after the redaction or alteration has occurred, removing or omitting the extracted text and metadata corresponding to the redactions or alterations in the document may be removed or omitted from the production. The producing party shall provide searchable text and metadata for those portions of the document that have not been redacted.

When a document has been redacted or altered in any fashion, the producing party must identify, as to each such document, the file's Document ID number and the basis for the redaction or alteration. Any redaction or alteration must be clearly visible on the redacted or

altered TIFF image. The producing party shall either populate designated fields within the metadata load file with the above information or provide a separate log of all redacted files which includes the above information. The producing party shall maintain the original un-redacted native file through the course of this case, and until all appeals have been exhausted.

### B. Production of Native Files.

For all ESI other than those listed in section I.A, the producing party will produce the ESI in its native file format. The native file must be named using the beginning Bates number and include any confidentiality designation. For ESI which is produced natively, metadata should be produced in the format described previously, with the addition of a field specifying the relative file path and file name of the records which are to be produced in their native format.

### C. Structured ESI That is Impractical to Produce in Native or Static Tiff Formats.

If a party believes that it would be impractical to produce certain ESI in native or static TIFF formats because it originates from a structured database such as scheduling programs (such as Primavera), accounting systems, mapping systems, and/or other databases (such as MS Access, Oracle, and Microsoft SQL Server), it will so notify the propounding party. In any such instance, the parties will meet and confer concerning the manner of production of that ESI, or by producing reports from the system which are generated in the normal course of business in an agreed upon reasonably usable format.

### D. Avoidance of Duplicate Production.

Prior to production, the producing party shall make reasonable attempts to de-duplicate the documents designated for production so that no mathematically identical file need be produced more than once, regardless of the number of instances of the file which may exist. In the instance of a compound document (e.g. an E-mail message with attachments) the entire compound document must be identical. The producing party will maintain references to all

removed duplicate files, and will include in its production a field detailing the other custodians in possession of duplicative instances of a particular file.

## II. PRODUCTION PROTOCOL FOR HARD COPY DOCUMENTS.

All documents being produced, which had existed in the normal course of business in hard copy paper format, will be produced in electronic static image file format in the manner provided herein:

### A. Format.

Documents originating in paper format will be produced as single-page static Group IV (1-bit, black-and-white) TIFF image files; in instances where color is reasonably necessary to comprehend a document, images will be produced in JPEG (.JPG) format. Each document's static electronic image will convey the same formatting and content as visible in the original document.

Any documents that present imaging or formatting problems shall be promptly identified and the parties shall meet and confer to attempt to resolve the problems.

### B. Bates Numbering.

The producing party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. The Bates number must not obscure any part of the underlying image.

### C. File Names.

Image file names will be identical to the corresponding Bates numbered images, with a ".tif" file extension.

### D. Confidentiality Endorsements.

The producing party will brand any confidentiality or similar endorsements in a corner of the TIFF image. Those endorsements must be in a consistent font type and size, and must not

obscure any part of the underlying image or bates number.

### E.  Production of Extracted Full Text.

For each hard copy paper document being produced as a static TIFF image, the producing party will also produce full machine searchable text captured through OCR, in a single text file corresponding to each document produced. The full text file name will be composed of the Bates number of the associated document's first page, with a ".txt" file extension.

### F.  Production of Metadata.

The producing party will provide the following metadata, to the extent available, for all imaged hard copy paper documents produced: Document ID number, start Bates, end Bates, start attachment, end attachment, custodian or source, name of folder and/or file where document was kept, page count. Documents must be unitized using logical document unitization.

## III.  PROVISIONS.

### A.  Cost Sharing.

Parties will generally bear the costs of their own productions, except where otherwise agreed, ordered, or provided by law.

### B.  Authentication and Admissibility.

Nothing herein shall constitute any admission, agreement, or waiver that any ESI or document is authentic or admissible at trial. The parties shall meet and confer on any authenticity or admissibility issues that may arise.

### C.  Production Media.

The producing party will use an appropriate electronic media (CD, DVD or hard drive) for all ESI productions. The producing party will label the physical media with the producing party, production date, unique media volume ID number, and Document ID number range.

### D.  Non-Waiver and Clawback of Inadvertently Produced Protected Material.

Some of the documents responsive to document requests may include attorney-client

privileged communications, protected attorney work-product prepared in anticipation of litigation, or other protected material (the "Protected Material"). To avoid waiver of any such privileges or protections as a result of the inadvertent disclosure of Protected Material it is agreed that:

1. **Non-Waiver.**

If a Party inadvertently produces documents (including ESI) that constitutes Protected Material, that inadvertent disclosure of any document which is subject to a legitimate claim that the document should have been withheld as Protected Material shall NOT be deemed and shall NOT serve as a basis for claiming a waiver of any privilege or other protective doctrine for the inadvertently produced document or of the subject matter of the inadvertently disclosed document, so long as the party takes action under section 4.b., below, within a reasonably prompt time after discovery of such inadvertent disclosure.

2. **Clawback.**

If a document (including ESI) is produced in discovery that is subject to a claim that constitutes Protected Material, the Party making the claim may notify the other Party that it received the document and the basis for the claim. After being so notified, a Party may not use or disclose the document until the claim is resolved. The receiving Party must either promptly return, sequester, or destroy the specified document, and any copies thereof, or within 30 days present the document at issue to the Court conditionally under seal for a determination of the producing Party's claim of privilege. Until the claim is resolved, the receiving party is required to preserve the information and keep it confidential. Any receiving party is precluded from using or disclosing the specified information until the claim of privilege is resolved.

3. **Retroactivity.**

This protocol shall not be applied retroactively. It shall apply to future document

productions. Nothing in this protocol is intended to apply to information or documents that already have been produced or for which processing for production is substantially complete ("Prior Productions"), where compliance would require the producing party to incur unreasonable costs to re-process the documents or information, so long as the information produced is reasonably usable by the receiving party and the production otherwise complies with applicable law. However, for any documents produced or substantially processed as part of Prior Productions in this case, the requesting party shall be entitled to obtain the additional information and metadata contemplated by this protocol upon request from the producing party, where it exists and is held by the producing party. The parties agree that documents produced in response to future document requests do not fall within the definition of Prior Productions, except where future productions refer back to and incorporate Prior Production in their response.

**IT IS SO STIPULATED.**

Dated: November 2, 2010                                         Dated: November 3, 2010

/s/   Jonathan M.Eldan                                           /s/ Patrick J. Dempsey

COBLENTZ, PATCH, DUFFY & BASS LLP            PROSKAUER ROSE LLP
One Ferry Building, Suite 200                                  1585 Broadway
San Francisco, CA 07102-5496                                New York, NY 10036-8299
Telephone No.: (415) 391-4800                              Telephone No.: (212) 969-3917
Facsimile No.: (415) 989-1663                                Facsimile No.: (212) 969-2900
Attorneys for Plaintiff and Counterclaim-               Attorneys for Defendant and Counterclaim-
Defendant                                                                  Plaintiff
SPD SWISS PRECISION DIAGNOSTICS GmbH    CHURCH & DWIGHT CO., INC.

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

Date: November 5, 2010

Hon. Tonianne J. Bongiovanni
United States Magistrate Judge